**NOT FOR PUBLICATION**



UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**NICHOLAS ELIAN AND MARTHA MIQUEO-ELIAN,**<br><br>Debtors. | Case No.: 10-49482 (DHS)<br><br>Judge: Hon. Donald H. Steckroth |
| **FRANK BERTUCCI,**<br><br>Plaintiff,<br><br>v.<br><br>**NICHOLAS ELIAN,**<br><br>Defendant. | Adv. No.: 11-02088 (DHS) |

**OPINION**

**APPEARANCES:**

Scura, Wigfield, Heyer & Stevens, LLP
John J. Scura, III, Esq.
1599 Hamburg Turnpike
P.O. Box 2031
Wayne, New Jersey 07470
*Counsel for Plaintiff*


Shapiro Croland Reiser Apfel & Di Iorio
John P. Di Iorio, Esq.
Continental Plaza II, 6th Floor
411 Hackensack Avenue
Hackensack, New Jersey 07601-6328
*Counsel for Debtor*

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Nicholas Elian and Martha Miqueo-Elian filed a chapter 7 bankruptcy petition on December 22, 2010 (the "Petition"). Frank Bertucci ("Plaintiff") filed a complaint objecting to Nicholas Elian's (the "Debtor") discharge pursuant to section 727 of the Bankruptcy Code. The amended complaint ("Complaint") filed by Plaintiff asserts four different claims in support of the requested relief under Sections 727(a)(2), 727(a)(3), 727(a)(4), and 727(a)(5).[1] The Complaint alleges that the Debtor transferred a mortgage interest to his brothers with the intent to hinder, delay or defraud Plaintiff within one year of the petition through the continuous concealment doctrine in violation of Section 727(a)(2). Plaintiff also alleges that Debtor failed to maintain records which show the source of his funds or the use of his funds expended on his businesses, in violation of Section 727(a)(3), and that the Debtor knowingly and fraudulently made a false oath by failing to list various financial accounts and assets on his Petition, in violation of Section 727(a)(4). Finally, the Complaint alleges that Debtor failed to explain satisfactorily a loss or deficiency of assets because Plaintiff's tax returns as originally filed support the conclusion that he should have had more money on hand as of the date of his bankruptcy filing, in violation of Section 727(a)(5).

The Debtor and Plaintiff have each filed motions for summary judgment in this case. The Debtor seeks summary judgment on all four counts of the Complaint. The Plaintiff concedes there are material facts at issue regarding the Section 727(a)(2) claim, and thus only seeks summary judgment regarding the 727(a)(3), 727(a)(4), and 727(a)(5) claims.

---

[1] Counts 5 and 6 (asserting causes of actions under Sections 727(a)(6) and 727(a)(7) were voluntarily dismissed with prejudice pursuant to a stipulation filed on June 19, 2012.

## FACTUAL BACKGROUND

Plaintiff is a judgment creditor of the Debtor. On August 12, 2009, the Superior Court of the Providence of Quebec, District of Montreal, entered a judgment against the Debtor resulting from a personal guaranty of a $1,065,948 loan given by Plaintiff (the "Bertucci Judgment").[2] The Plaintiff filed a proof of claim in the bankruptcy proceeding in the amount of $1,347,247.38 on March 28, 2011. The Debtor's sole asset in Canada was property he owned in Montreal at 6111 du Blise, Apartment 91 (the "Montreal Condo"), which he purchased for $600,000 from his brother, Hanna Elian, by deed of sale dated October 28, 2005. The Bank of Montreal held a $300,000 mortgage on the Property. According to the petition, the first mortgage on the Montreal Condo was $280,000. On August 15, 2009, the Debtor and his wife (a joint-debtor) executed a power of attorney in favor of the Debtor's sister-in-law, Lina Elian. The power of attorney states its purpose as "to hypothecate for the guarantee of the reimbursement of all present and future indebtedness." Lina Elian then executed a mortgage on behalf of the Debtor and his wife to Elian's two brothers, Hanna and Tony Elian in the amount of $500,000. The Debtor was aware of the Bertucci Judgment when the mortgage was executed. The Debtor and his wife still own the Montreal Condo, but Lina Elian now lives there. It is unclear whether she pays any fee, but the Debtor and his wife have not disclosed rental income. The Debtor claimed, without evidence, that he owed his brothers an estimated value of "a couple hundred thousand dollars" because his brothers had loaned him money to attend dental school in the 1980's. The Debtor listed his brothers as secured creditors in the amount of $200,000 with respect to the $500,000 mortgage on the Montreal Condo, but stated in his deposition that he cannot ever remember paying any money back to his brothers on the mortgage.

---

[2] The Debtor disputes the Bertucci Judgment was for a personal guaranty and asserts that it was from a confession of judgment signed by the Debtor.

The Debtor is a licensed dentist specializing in prosthodontics.[3] In 2004, he maintained a dental practice at offices he leased in Fort Lee, New Jersey. The Debtors owned 66 2/3% of 300 Sylvan Avenue, LLC ("Sylvan"), which acquired property located at 300 Sylvan Avenue, Englewood Cliffs, New Jersey (the "Property") with monies contributed by the Debtors and the other members of 300 Sylvan, and a mortgage loan. All those who bought the Property are licensed dentists. They intended to form a dental practice and a company providing a specialized dental education in prosthodontics. Because the Property needed to be refurbished and new equipment had to be purchased, the Debtor sought additional money from friends and family in an effort towards making the company operational. Between October 2006 and April 2008, the Debtor borrowed a total of $6,440,000 from family and friends (the "Lenders"), the proceeds of which were deposited into his personal bank accounts.

At the time the Property was acquired, the Debtor formed and became the sole member of Vizstara, LLC, a dental practice, and Vizstara Professional, LLC, a dental education company (together, the "Vizstara Companies"). In December 2010, the Vizstara Companies were facing eviction from the Property by a rent receiver appointed upon request of the mortgage lender. On December 22, 2010 (the "Petition Date"), the Debtor filed a personal bankruptcy, and caused the Vizstara Companies to file chapter 11 bankruptcies as well. The Debtor asserts the financial documents also confirm that as of the Petition Date, he had no more than $19,819.49 in cash as reflected in his schedules.

Plaintiff retained an accounting expert, Joseph R. Petrucelli of PP&D Accounting Services, Inc., to analyze the Debtor's financial condition. Petrucelli issued reports dated May 15, 2012 and September 4, 2012 (the "PP&D Reports"), which illustrate that based on the

---

[3] Prosthodontics is the dental specialty pertaining to the diagnosis, treatment planning, rehabilitation, and maintenance of the oral function, comfort, appearance, and health of patients with clinical conditions associated with missing or deficient teeth and/or oral and maxillofacial tissues using biocompatible substitutes.

Debtor's income and with no mortgage payments, the Debtor should have had substantially more than $19,819.49 in cash on deposit as of the Petition Date. Additionally, in order to obtain a $500,000 loan just 19 months prior to the bankruptcy filing, the Debtor submitted a financial statement to Team Capital Bank dated May 18, 2009 which lists, among other things, cash of $400,000 and personal property of $750,000. The Plaintiff asserts that based on the PP&D Reports, there is no reasonable accounting explanation for the reduction of cash and personal property from $1,150,000 ($400,000 plus $750,000) in May of 2009 to $20,819.49 ($19,819.49 plus $1,000 personal property) in December 2010.

The Debtors retained Jerry Kling & Company to review the Plaintiff's PP&D Reports, and to conduct an analysis of the Debtor's finances (the "Kling Report"). The Kling Report provides that the Debtor accurately reported the amount of money he had on hand at the time of the bankruptcy filing. The Debtors both deny ever having signed a financial statement to Team Capital Bank, but the Plaintiffs have offered the Debtor's testimony that he did sign documents in connection with the $500,000 loan with Team Capital Bank. (Certification of David E. Sklar in Supp. of Pl.'s Mot. for S. Judgment ("Sklar Certification"), Ex. N).

The Debtor did not file 2008 and 2009 tax returns until 2013. Debtor's counsel sent an amended 2010 tax return and the 2008 and 2009 tax returns to Plaintiff's counsel after receiving the PP&D reports. There were losses on the returns due to depreciation, a non-cash item. Thus, Plaintiff asserts the Debtor still had substantial income in 2009 and 2010, yet has no reasonable explanation for his lack of cash on the Petition Date. Based on the tax returns, the Debtor is entitled to pre-petition New York State and federal tax refunds totaling $84,484.41. The Petition has not been amended to reflect these tax refunds and the funds have not been turned over to the estate.

On Schedule I, the Debtor claimed that he and his wife earn $16,030.30 monthly. In Schedule J, they claim the sum of $16,669 in expenses (including $9,876 in mortgage payments) despite the Debtor's testimony under oath that the couple had not been paying the mortgage on their principal residence for a year prior to filing.

The Debtor testified that he put $3,500,000 into the Vizstara Companies, but would not admit this was a loan. The tax returns for Sylvan indicate that Debtor made partner loans to the company worth more than $1,000,000 dollars. At his 341 meeting, the Debtor did not disclose either of these loans when questioned if he was owed money. After the adversary complaint was filed, the Debtor filed an amended schedule listing a possible claim against Sylvan. No loans to the Vizstara Companies have been scheduled to date.[4]

The Debtor asserts his financial records indicate that he spent $6,462,581.05 on payments to Sylvan, the Vizstara Companies, and on payments to Lenders. The Debtor's prior accountant had not accounted for the substantial payments made to or on behalf of his businesses in the Debtor's tax returns for the years 2008 through 2012, and thus Debtor asserts those tax returns had to be amended to illustrate his increased adjusted gross income which resulted from significant depreciation deductions for fixed business assets.

The schedules Debtor initially filed failed to list: (1) a retirement account maintained at TIAA Cress worth $223,000, (2) the Debtor's wedding ring, (3) his interest in seven other businesses which he states were not active and never operated, (4) a TD Bank account titled in Debtor's wife's name with a balance of about $250 on the Petition Date, and (5) a loan due to the Debtor from Sylvan. The schedules were later amended to include all this information.

---

[4] In this Court's Opinion in *In re Vizstara*, Case No. *10-49434*, it was held that these payments from the Debtor were loans. (*See* Ex. T)

## DISCUSSION

I. **Summary Judgment**

    A.     **Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

**B.    11 U.S.C. § 727(a)(2)**

Under 11 U.S.C. § 727(a)(2)(A), no discharge shall be granted if—

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

The Debtor has moved for summary judgment regarding this claim, while the Plaintiff has not. However, in the Plaintiff's opposition to the Debtor's summary judgment motion, he argues that although the Debtor granted the mortgage against the Montreal Condo to his brothers more than one year before his bankruptcy filing, the continuous concealment doctrine applies to bring this transfer within the realm of a Section 727(a)(2)(A) claim. The Plaintiff argues that for the concealment to rise to the level causing a debtor's bankruptcy discharge to be denied, "the debtor must possess some property interest" in the property being concealed. *Id.* Further, courts have held that "a concealment will be found when a debtor purports to transfer an asset, making it appear as if he no longer owns it, but he in fact retains an interest in the asset." *In re Self*, 325 B.R. 224, 237-8 (Bankr. N.D. Ill. 2005) (citing *Village of San Jose v. McWilliams*, 284 F.3d 785, 794 (7th Cir. 2002)); *In re Holstein*, 325 B.R. 224, 229 (Bankr. N.D. Ill 2003).

The Debtor relies on the *Rosen* case for the proposition that since he retained no secret interest in the Property, the continuous concealment doctrine does not apply. *See Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993) ("[I]n order to prevail under the continuous concealment doctrine a plaintiff must show that there was a concealment of property and that '[a] legally relevant concealment can exist, however, only if there is in fact some secret interest in the property retained by the debtor.'"). The Debtors contend the fact that the Debtor continued to

own the Montreal Condo is insufficient to prove a secret interest for the continuous concealment doctrine.

A mortgage is an interest in real property. The granting of security for a debt is a transfer under the Bankruptcy Code. *See* 11 U.S.C. § 101(54). Here, the Debtor gave his brothers a mortgage allegedly in consideration for dental school loans from them for which the Debtor provided no evidence. He did this with knowledge of the Bertucci Judgment. Additionally, the Debtor stated in his deposition that he does not remember paying any money back to his brothers on the mortgage. The details of the Debtor's intent with regard to the mortgage during the year prior to the filing (which are necessary to analyze the continuing concealment doctrine) is a genuine dispute of material fact which should be reserved for trial. *See In re Olivier*, 819 F.2d 550, 555 (5th Cir. 1987) (discussing "the well-settled doctrine that . . . the concealment of an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy"); *Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993) (the court remanded the matter to the district court because intent should not be determined on a motion for summary judgment).

Thus, because the issue of intent during the year prior to the petition is central to the continuous concealment doctrine, the Court denies the Debtor's motion for summary judgment with respect to the Section 727(a)(2) claim.

C.     **11 U.S.C. § 727(a)(3)**

Pursuant to 11 U.S.C. § 727(a)(3), no discharge shall be granted if—

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

Pursuant to § 727(a)(3), the Plaintiff must establish by a preponderance of the evidence that: (1) the debtor failed to maintain and preserve records; and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992) (citing *In re Decker*, 595 F. 2d 185,187 (3d Cir. 1979)).

Both the Debtor and Plaintiff have moved for summary judgment on this count. Here, the Plaintiff relies on the PP&D Reports' conclusion that the general ledger and other records of Vizstara were incomplete or inconsistent. The Debtors argue that the proper inquiry here is whether any of the Debtor's recorded information allows for the Debtor's financial condition or business transactions to be ascertained, and thus, the books and records of Debtor's businesses are not at issue and not relevant to the claim. The Debtor's business transactions consisted of his investments in Sylvan and the Vizstara Companies. The Kling Report shows both the source and use of the loans Debtor obtained to make the payments to his companies, and it details all of the Debtor's receipts. Additionally, the amendment to the tax returns corroborates the Debtor's use of funds. The Kling Report illustrates that the Debtor did not have more in bank deposits on the Petition Date than is reflected in his petition, and shows the source of funds as well as the use of funds. Thus, because the records presented allow the Debtor's financial condition or business transactions to be ascertained, the Kling report overcomes the Plaintiff's argument.

Plaintiff also asserts that the Debtor's failure to file tax returns is a failure to maintain adequate records. Courts have found that a "blatant example of a failure to maintain adequate records" is the failure to file tax returns on a timely basis. *In re Adalian*, 500 B.R. 402, 408 (Bankr. M.D. Pa. 2013); *In re Womble*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003). Plaintiff also notes that the Debtor is a sophisticated businessman who is held to a higher standard of

maintaining records. Here, the Debtors did eventually file the missing tax returns, and his accountants were able to ascertain the Debtor's financial condition at the time of filing (i.e., that the Debtor and his wife had $19,819.49 cash on deposit). While Plaintiff asserts that some of the Debtor's business transactions are unclear, he does not assert any specific records that the Debtor destroyed or failed to preserve which led to the Plaintiff's inability to ascertain certain transactions. Thus, the Court will deny the Plaintiff's motion for summary judgment and grant the Debtor's motion for summary judgment with respect to the Section 727(a)(3) claim.

### D.    11 U.S.C. § 727(a)(4)

Pursuant to 11 U.S.C. § 727(a)(4), no discharge shall be granted if—

> (4) the debtor knowingly and fraudulently, in or in connection with the case —
> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

Both the Debtor and Plaintiff have moved for summary judgment on this count. The Plaintiff alleges that the Debtor knowingly and fraudulently made a false oath by failing to list various financial accounts and assets on his petition. The Debtor offers explanations for the non-disclosures. He explains that the TIAA Cress retirement account was not listed because he mistakenly forgot he owned it since it was established and maintained by his employer, New York University Dental School. The Debtor also states that his attorney did not advise him that he had to include his interest in businesses, even if inactive. He asserts he did not know about the TD Bank account titled in his wife's name, and finally the Debtor asserts that he did not list the loan due from Sylvan because he considered those payments as rent and not loans. He

disclosed those payments as rent in the Vizstara bankruptcies. The Debtor asserts that he did his best to review the petition and schedules but that the bankruptcy was a very trying time because he lost his friends' and families' money, he was resigning from his position at New York University, and was busy responding to motions in the Vizstara bankruptcies. The Debtor asserts the omission of the above items from the initial schedules did not affect the trustee's administration of the case and in fact, the trustee did not file an objection to Debtor's discharge.

The Debtor asserts that each of the items which was initially not listed on his schedules (with the exception of a bank account titled in the name of Debtor's wife) consisted of exempt assets or assets with no value, and thus did not affect the administration of the estate. *See In Re Wright*, 364 B.R. 51, 52 (Bankr. D. Mont. 2007), *affd*, 2008 U.S. Dist. LEXIS 3347 (D. Mont., June 15, 2008) affd, 340 Fed. Appx. 422 (9th Cir. 2009) ("an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate."). Additionally, the Debtor states that each of the items initially omitted from the Debtor's schedules was later included. Specifically, the Debtor argues that the failure to list one retirement account and businesses that never operated was the result of ignorance, not knowing and fraudulent actions. *See In re Pratt*, 411 F.3d 561 (5th Cir. 2005), *affd.*, 242 Fed. Appx. 249 (5th Cir. 2007) where the incorrect statements related to items which had no value or were exempt assets and had no effect on the claims of creditors or the administration of the estate.

Plaintiff asserts, however, that extreme carelessness when filling out a bankruptcy petition and "omission of assets from the debtor's reckless disregard for truth" will not suffice as a defense to knowingly and fraudulently making a false oath. *Scimeca v. Umanoff*, 169 B.R. 536, 543 (D.N.J. 1993) *aff'd sub nom. In re Scimeca*, 30 F.3d 1488 (3d Cir. 1994). Furthermore,

a Debtor cannot undo a false oath upon its discovery by subsequently amending his schedules. *In re Costello*, 299 B.R. 882, 899-900 (Bankr. N.D. Ill. 2003); *Matter of Hussan*, 56 B.R. 288, 293 (Bankr. E.D. Mich. 1985); *Matter of Braten Apparel Corp.*, 21 B.R. 239, 262 (Bankr. S.D.N.Y. 1982). In addition to the Debtor's failure to mention the assets discussed above, he still has not disclosed a rental agreement with his sister-in-law, his New York University retirement account, millions of dollars in loans, and thousands of dollars in pre-petition tax returns. Moreover, he falsified his net monthly income on his schedules.

Here, the Debtor's actions illustrate, at best, a pattern of extreme carelessness and indifference, which at the very least, supports granting the Plaintiff's motion for summary judgment with respect to the Section 727(a)(4) claim.

E.   **11 U.S.C. § 727(a)(5)**

Both the Debtor and Plaintiff have moved for summary judgment on this claim. Section 727 (a)(5) provides that a debtor shall not receive a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Section 723(a)(5) is designed to work in tandem with Section 727(a)(3) to foster the same process of investigation and disclosure promoted in § 727 (a)(3). *In re Burrik,* 459 B.R. 881, 895 (Bankr. W.D. Pa. 2011). A debtor's explanation of a loss of assets does not need to be meritorious nor does the disposition of assets need to be proper, rather the explanation must simply satisfactorily account for the disposition. *See In Re Bodenstein*, 168 B.R. 23 (Bankr. E.D.N.Y. 1994).

Here, Plaintiff's section 727(a)(5) claim is based on the contention that Debtor cannot account for the loan monies he received. Debtors assert that the Kling Report fully and completely shows that there are records which demonstrate Debtor's source and use of funds for

the years 2008 through 2010, and therefore, there is no genuine dispute that Debtor has satisfactorily accounted for the use of the loan proceeds.

Significantly, Plaintiff relies upon the Debtors' Team Capital Bank personal financial statement dated May 18, 2009 which lists, among other things, cash of $400,000 and personal property of $750,000 (totaling $1,150,000). The Debtors both deny ever having signed this document (without offering evidence at to who would have signed the false financial statement), and the Plaintiffs have offered the Debtor's testimony that he did sign documents in connection with the $500,000 loan with Team Capital Bank. (Sklar Certification, Ex. N). While the Debtors' assets according to the Team Capital Bank statement were $1,150,000, he only reported $19,819.49 in cash on deposit and $1,000 in personal property in his schedules (totaling $20,819.49). Plaintiff's accountant stated that Debtor and his wife provide no reasonable accounting explanation for the loss of $1,129,180.51 ($1,150,000 - $20,819.49) in personal property and funds in their bank accounts during the nineteen- month period prior to filing bankruptcy. Additionally, it does not appear that that the Debtor can provide documentation as to what happened to the assets during the time between when the financial statement was prepared and sent to Team Capital Bank and Debtors' filing for bankruptcy.

The Debtors rely on the Kling Report and their last minute filing of tax returns to justify the massive reduction in funds. However, there is no acceptable explanation of what happened to the assets. Thus, with respect to the Section 727(a)(5) claim, the Court shall deny the Debtor's summary judgment motion, and grant the Plaintiff's motion for the Debtor's failure to satisfactorily explain the loss of $1,129,180.51.

## CONCLUSION

In conclusion, because the issue of intent during the year prior to the petition is central to the continuous concealment doctrine, the Court must deny at this time the Debtor's motion for summary judgment with respect to the Section 727(a)(2) claim. Also, for the reasons stated above, the Court will deny the Plaintiff's motion for summary judgment and grant the Debtor's motion for summary judgment with respect to the Section 727(a)(3) claim.

Because of the Debtor's failure to list multiple assets on his petition, the Court will grant the Plaintiff's motion with respect to the 727(a)(4) claim. Finally, with respect to Section 727(a)(5), the Court will also grant the Plaintiff's motion for summary judgment.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: July 1, 2014